# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| KRISTINE SIMPSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 3:19-CV-33-PPS-MGG |
| | ) |
| THOR MOTOR COACH, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

On February 13, 2019, Defendant, Mercedes-Benz USA, LLC ("MBUSA"), filed its Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). On February 26, 2019, both Plaintiffs and Defendant, Thor Motor Coach ("TMC"), filed their response briefs in opposition to MBUSA's motion. MBUSA filed a reply brief on March 13, 2019, eight days after the reply was due. *See* N.D. Ind. L.R. 7-1(d)(2)(B). The Court would typically be inclined to ignore an untimely reply brief. However, in this case, neither Plaintiffs nor TMC challenge the untimely brief. More importantly, MBUSA's reply brief does not change the Court's final decision on the motion to transfer. Therefore, the Court considered MBUSA's reply brief in its decision to deny the motion to transfer, as discussed below.

## I. RELEVANT BACKGROUND

This case involves a defective RV manufactured as a complete vehicle in Indiana by TMC, a corporation with its principal place of business in Indiana, using a chassis and related parts manufactured by MBUSA, a corporation with its principal place of

business in Georgia[1]. The RV was warranted in whole or party by TMC while the underlying chassis and related parts were warranted in whole or party by MBUSA. Plaintiffs, citizens of Colorado, purchased the defective RV in Utah. Repairs to Plaintiffs' RV were performed before the sale in Utah and after the sale in Colorado under both TMC's and MBUSA's warranties. The RV's defects, however, were never completely repaired or were not repaired within a reasonable amount of time or repair attempts. Thus, Plaintiffs filed their complaint alleging TMC's and MBUSA's breaches of warranty or contract and violations of the Magnuson Moss Warranty Act.

Notably however, Plaintiffs did not attach a copy of either TMC's or MBUSA's warranty to their complaint or otherwise allege the full terms of the separate warranties. Not being a party to the TMC warranty and without any knowledge of its terms, MBUSA filed the instant motion to transfer under 28 U.S.C. § 1404(a). Through its motion, MBUSA applied the typical Section 1404(a) transfer analysis arguing that the convenience of the witnesses and the interests of justice favor transfer of this action to the District of Utah.

Plaintiffs and TMC then reported in their response briefs that the TMC warranty contains a forum-selection clause requiring that any dispute between TMC and Plaintiffs be brought in courts within the State of Indiana. [*See* DE 10-2 at 6]. Thus, Plaintiffs and TMC contend that the transfer analysis must be adjusted to account for the policy outlined in *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,*

---

[1] Based upon the allegations of TMC's and MBUSA's principal places of business in Plaintiffs' complaint, the Court will assume that TMC is an Indiana corporation and MBUSA is a Georgia corporation. [*See* DE 1 at 3–4, ¶¶ 6–7].

2

571 U.S. 49 (2013) favoring enforcement of valid forum-selection clauses. Furthermore, Plaintiffs and TMC argue that an additional analysis is required in considering transfer of this case because MBUSA is not a party to the TMC Warranty's forum-selection agreement citing *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 404–05 (3d Cir. 2017), *cert. denied sub nom. Nordyke v. Howmedica Osteonics Corp.*, 138 S. Ct. 1288 (2018) and *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014).

Reacting to this revelation of a forum-selection clause, MBUSA noted that it would have filed a motion to sever and transfer instead of a Rule 1404(a) transfer motion had it been aware of the clause. In so doing, MBUSA implied its acceptance of the validity of the newly reported clause as between Plaintiffs and TMC. MBUSA then cited *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785 (N.D. Ill. 2001) in support of its position that Plaintiffs' failure to allege the existence of a valid forum-selection clause in their complaint dictates application of the typical Section 1404(a) analysis here, rather than the *Atlantic Marine/Howmedica* forum-selection clause analysis. MBUSA concluded by reiterating its position that the Section 1404(a) convenience and interest of justice factors justify transfer to either the District of Colorado or the District of Utah.

Before turning to the merits of MBUSA's transfer motion, the Court must first determine whether the typical Section 1404(a) transfer analysis can be applied as MBUSA requests considering the forum-selection clause in the TMC Warranty.

II.   ANALYSIS

   A.   **Proper Transfer Analysis**

3

Pursuant to 28 U.S.C. § 1404(a), a federal district court may transfer any civil action to any other district for the convenience of the parties and witnesses and in the name of justice, if venue is proper in both courts. Therefore, the typical Section 1404(a) transfer analysis involves a balancing of private and public interests through separate inquiries into (1) the proper venue in the transferor and transferee courts; (2) the convenience of parties and witnesses; and (3) the interest of justice. *Research Automation Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The burden is on the movant to show that transfer is warranted. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). However, the statute allows for a "flexible and individualized" analysis of the unique issues raised in a particular civil action, which therefore places considerable discretion in the transferor court when deciding whether transfer is appropriate. *Research Automation*, 626 F.3d at 977–78 (citing *Stewart Org., Inc. v. Ricoh Corp., et al.*, 487 U.S. 22, 29 (1988)). Notably, "when the inconvenience of the alternative venues is comparable there is no basis for a change of venue[.]" *Scottsdale Ins. Co. v. PMG Indus., LLC*, No. 2:16-CV-373-RLM-PRC, 2016 WL 7228796, at *2 (N.D. Ind. Dec. 14, 2016) (citing *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003)).

The transfer calculus changes, however, when the parties enter a contract that includes a forum-selection clause reflecting their pre-suit agreement as to the most proper forum for resolution of their disputes. *Atlantic Marine*, 571 U.S. at 63. "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (internal

4

quotations and citations omitted). Therefore, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* The Court then outlined a modified Section 1404(a) analysis for cases where all parties to the case were also parties to a valid forum-selection clause.

The *Atlantic Marine* analysis, however, did not address directly cases where some but not all the parties had contracted to a particular forum through a forum-selection clause. In 2014, the Fifth Circuit first applied the principles of *Atlantic Marine* to this problem in *In re Rolls Royce Corp.* In *Rolls Royce*, the court noted that (1) a valid-selection clause favored, as a matter of law, severance of claims or parties subject to the clause and transfer to enable litigation in the contracted-for forum; (2) the private factors of non-contracting parties had to be considered separately just as they would be in any Rule 21 severance or Section 1404(a) transfer analysis; and (3) the interests of judicial economy in having all claims determined in a single lawsuit could outweigh any interest of the non-contracting party in a different forum. 775 F.3d at 679.

Faced with somewhat different facts in a similar case involving a forum-selection clause between only some parties, the Third Circuit modified the *Rolls Royce* framework into a four-step analysis. *In re Howmedica*, 867 F.3d at 403–05. Under *Howmedica*, a court must first

> assume[] that *Atlantic Marine* applies to parties who agreed to forum-selection clauses and that, in all but the most unusual cases, claims concerning those parties should be litigated in the fora designated by the clauses. . . .
>
> Second, the court performs an independent analysis of private and public interests relevant to non-contracting parties, just as when adjudicating a

5

> § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses. . . .
>
> Third, if the Step One and Step Two analyses point different ways, then the court considers severance. *See* Fed. R. Civ. P. 21. . . . [If] severance is neither clearly warranted nor clearly disallowed, . . . the court goes on to select the appropriate fora based on a combination of interests addressed at the next step. . . .
>
> Fourth, . . .a district court exercises its discretion . . . in choosing the most appropriate course of action [by considering] efficiency interests in avoiding duplicative litigation, . . . taking into account case management techniques that can reduce inefficiencies accompanying severance . . . as well as any other public interests that may weigh against enforcing a forum-selection clause . . . . [and weighting them against] the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests.
>
> [Depending upon the outcome of the *Howmedica* analysis, a district court could decide to] retain the case in its entirety, transfer the case in its entirety, or sever certain parties or claims in favor of another forum. [Important factors for the court to consider include] the nature of any interests weighing against enforcement of any forum-selection clause; the relative number of non-contracting parties to contracting parties; and the non-contacting parties' relative resources, keeping in mind any jurisdiction, venue, or joinder defects that the court must resolve. [To decline to enforce a valid forum-selection clause, a court must find that the countervailing interests overwhelmingly outweigh] the strong public interest in upholding the contracting parties' settled expectations.

*Id.*

Here, however, MBUSA asks the Court to ignore the policy favoring enforcement of valid forum-section clauses espoused in *Atlantic Marine* and to apply the typical Section 1404(a) transfer analysis rather than the *Howmedica* framework in determining whether transfer of this case in its entirety is warranted. MBUSA's argument appears grounded in what can amount only to an implication that Plaintiffs waived the effects

of the forum-selection clause by failing to mention the clause in their complaint or to attach any documentation of the clause to their complaint.

MBUSA cites no legal authority to support the proposition that a forum-selection clause is only enforceable if alleged in a complaint or is waived when a plaintiff does not explicitly report it in the complaint. Instead, MBUSA argues that all the facts alleged in Plaintiffs' complaint should be taken as true for purposes of resolving a motion to transfer citing only *Moore v. AT&T Latin America Corp.* without further explanation. *Moore*, however, is clearly distinguishable.

In *Moore*, the court was presented with a Rule 12(b)(3) motion to dismiss for improper venue, or alternatively, a Section 1404(a) transfer motion in a breach of contract and declaratory judgment case arising from a settlement agreement. 177 F. Supp. 2d at 787–88. Nothing in the court's opinion suggests the existence of a forum-selection clause in that agreement. As a result, the court only analyzed whether venue was proper under 28 U.S.C. § 1391 and whether transfer was warranted under Section 1404(a). *Id.* at 788-91. Thus, that court's conclusion that the convenience of the witnesses and interests of justice warranted transfer is of no relevance to this case.

Of course, *Howmedica* is not binding upon this Court because it was decided by the Third Circuit Court of Appeals. The Seventh Circuit does not appear to have considered the situation at hand where venue is challenged by a party not subject to a forum-selection clause affecting all the other parties. Another district court in this circuit, however, applied the *Atlantic Marine* principles to a similar factual situation, suggesting another analytical framework consistent with but different from the

7

*Howmedica* approach. *MB Fin., Inc. v. Hart*, No. 17 C 8866, 2018 WL 3920715 (N.D. Ill. Aug. 16, 2018). The *MB Financial* court relied upon the doctrine of pendent venue in denying a Rule 12(b)(3) motion to dismiss or motion to transfer. "Federal courts increasingly recognize that under the doctrine of pendent venue, venue may be proper with respect to an improperly venued claim if the claim is joined to a properly venued claim, and the claims arise out of a common nucleus of operative fact." *Id.* at *5 (quoting *Woodrum/Ambulatory Sys. Dev., LLC v. Lakeshore Surgical, LLC*, No. 08 C 1721, 2009 WL 256286, at *5 (N.D. Ill. Jan. 28, 2009) (internal quotations and citations omitted))).

In this case, no party—not even MBUSA—suggests that any claim in this action is improperly venued here in the Northern District of Indiana. Therefore, the pendent venue doctrine is not directly applicable. Yet the *MB Financial* court's reliance on a "common nucleus of operative fact" to ascertain venue in the face of a forum-selection clause that did not apply to all parties is consistent with the *Howmedica* framework at both Step Two, where the situs of material events matters in evaluating the private interests of the non-contracting party, and Step Four, where judicial economy takes center stage. Therefore, this Court is persuaded that the *Howmedica* framework will adequately protect MBUSA's interests while giving proper deference to Plaintiffs' and TMC's expectations reflected in the valid forum-selection clause in the TMC Warranty.

### B. *Howmedica* Framework Analysis

#### 1. Step One: Assumed Validity of Forum-Selection Clause

Assuming that the TMC Warranty's forum-selection clause is valid is not difficult in this case because none of the parties have challenged the validity of the clause as to

TMC and Plaintiffs. Moreover, Plaintiffs and TMC agree that this case should remain, in its entirety, here in the Northern District of Indiana.

### 2. Step Two: MBUSA's Private and Public Interests

#### a. Private Interests

MBUSA's private interests relative to transfer are reflected through consideration of the convenience of the potential fora for parties and witnesses. *See Stewart Org.*, 487 U.S. at 29; *Research Automation*, 626 F.3d at 978. In evaluating the convenience element, courts generally consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of witnesses; and (5) the convenience of the parties. *Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009). A litigant seeking a transfer of venue has the burden of showing that the transferee court—in this case the District of Utah or the District of Colorado—is "clearly more convenient than the transferor court." *Coffey*, 796 F.2d at 220; *see also State Farm Mut. Ins. Co. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996).

##### i. Plaintiffs' Choice of Forum

When considering the convenience factor, a plaintiff's choice of forum is generally entitled to substantial deference and should rarely be disturbed. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003); *Am. Commercial Lines, LLC v. Ne. Maritime Inst., Inc.*, 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008). However, "[t]hat deference is lessened . . . where the plaintiff's chosen forum is not the plaintiff's home forum or

9

has relatively weak connections with the operative facts giving rise to the litigation. *Body Sci. LLC v. Bos. Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012).

Here, Plaintiffs' home forum is Colorado where they are domiciled and residing, not Indiana. Moreover, many of the operative facts giving rise to this litigation occurred in Utah and Colorado, namely the sale and repairs of the RV at issue. Accordingly, MBUSA argues that Indiana has a weak connection to the operative facts of this litigation. Plaintiffs, however, suggest that their claims involve operative facts arising in Indiana, such as the design, assembly, manufacture, and distribution of Plaintiffs' RV. Thus, analysis of the situs of material events becomes particularly important.

### ii. Situs of Material Events

"Material events are those that give rise to the cause of action." *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 961 (N.D. Ill. 2006) (citing *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188–89 (N.D. Ill.1995)). The primary material location for products liability claims is likely the place of manufacture or design of the product at issue. *See Von Holdt*, 887 F. Supp. at 188–89. Here, the RV was allegedly designed, assembled, manufactured, and distributed in Indiana. Plaintiffs have not raised a products liability claim, however, diminishing but not necessarily eliminating the materiality of the location of the RV's design and manufacture.

Instead, Plaintiffs seek relief based on Defendants' alleged breaches of their respective warranties and their alleged violations of the Magnuson Moss Act ("MMA"), 15 U.S.C. § 2301 *et seq.* The MMA establishes rules governing warranties "[i]n order to

10

improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C.§ 2302(a).

With a focus on the warranties and their enforcement, the material events in this case clearly involve the sale and repairs of the RV in Colorado and Utah. Nevertheless, the design and manufacture of the RV could be implicated in analyzing Plaintiffs' warranty claims making Indiana a situs of at least some material events. Moreover, the relevant warranties were presumably drafted by Defendants in their home states of Indiana and Georgia. Additionally, Plaintiffs likely communicated with TMC and MBUSA or their agents, which could have been located in Indiana, Georgia, Colorado, or Utah, when invoking the benefits of the warranties. Thus, the situs-of-material-events factor does not clearly favor the Utah, Colorado, or Indiana forum.

### iii. Relative Ease of Access to Sources of Proof

As discussed above, the situs of material events is not particularly clear in this case. Sources of proof related to the sale and repairs will no doubt be accessible in Utah and Colorado. However, some of the warranty-related sources of proof could be held by Defendants or their agents in Indiana and Georgia. Additionally, sources of proof related to the design and manufacture of the RV would be held in Indiana. Thus, no potential forum would be dramatically more convenient for accessing sources of proof.

### iv. Convenience of the Parties

This factor involves the consideration of the parties' respective residences and their abilities to bear the expense of trial in a particular forum. *Coll. Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1056 (N.D. Ill. 1995). Courts should avoid transfer when it

merely shifts inconvenience from one party to another without sufficient cause. *Research Automation*, 626 F.3d at 979. Transferring this case, involving parties from Colorado, Indiana, and Georgia, to Utah or Colorado would just shift inconvenience from MBUSA to both TMC and Plaintiffs. This is true even for Plaintiffs in Colorado who live closer to Utah than to Indiana because they previously agreed to litigate any dispute with TMC in Indiana and are not fighting venue in Indiana. Thus, the convenience-of-the-parties factor favors Indiana where two of the three parties agreed to litigate. Indiana is also geographically closer to MBUSA's principal place of business in Georgia than either Colorado or Utah suggesting that litigation in Indiana would be at least equally convenient for MBUSA.

### v. Convenience of Witnesses

The convenience of witnesses is often considered the most important factor in the convenience analysis, and courts consider everything from the number of witnesses to their willingness to appear. *Omnisource Corp. v. Sims Bros., Inc.*, No. 1:08-CV-89, 2008 WL 2756345, at *6 (N.D. Ind. July 14, 2008). Yet "[c]ourts typically presume that witnesses who are parties' employees and paid experts will appear voluntarily and therefore are less concerned about the burden that appearing at trial might impose on them." *Abbott Labs. v. Church & Dwight, Inc.*, No. 07 C 3428, 2007 WL 3120007, at *4 (N.D. Ill. Oct. 23, 2007). Giving no consideration to the convenience of the parties' employees or their paid experts as witnesses, the Court turns to the other potential witnesses in this case.

As MBUSA correctly notes, the sales and repair staffs from the relevant RV dealerships and repair shops in Utah and Colorado are likely to be key witnesses in this

12

case. They are not parties to this action and would be burdened if called to appear at any proceeding in Indiana. Moreover, any subpoena this Court might issue could not command any Utah or Colorado residents to appear in Indiana because it is more than 100 miles from their residence and presumably is not a state where they reside, work, or regularly transact business. *See* Fed. R. Civ. P. 45(c)(1)(A).

As a result, Colorado and Utah appear to be the more convenient fora for the non-party witnesses identified in this case so far. With that said, TMC has already reported its intention to conduct video depositions of those non-party witnesses so that their personal appearances are not required at any proceeding, including trial, in Indiana. Such a procedural option mitigates if not alleviates the convenience problem MBUSA articulates. Thus, the convenience-of-the-witnesses factor only slightly favors the Colorado and Utah fora.

In total, the private interest factors do not establish that any one forum is clearly more convenient than another. *See Coffey*, 796 F.2d at 220. Even giving MBUSA the benefit of the doubt, the Colorado and Utah courts are only slightly more convenient than this Court.

    **b.**  **Public Interests**

MBUSA's public interests relative to transfer are reflected through an assessment of the interest of justice, which focuses on the efficient administration of the courts. *Research Automation*, 626 F.3d at 978. Factors that are relevant to this analysis include: (1) the speediness of trial in either jurisdiction; (2) each court's familiarity with the relevant law; and (3) each location's relationship to the controversy. *Id.*

As to the speediness of trial, MBUSA agrees that the data favor neither Indiana nor Utah. MBUSA similarly contends that the familiarity of the courts with the applicable law is a non-issue.[2] MBUSA hangs its hat on Colorado's and Utah's obvious interest in this litigation because the RV sale and repairs occurred in those states. MBUSA fails to consider that Indiana has an interest in litigation related to warranties issued by companies incorporated there. Additionally, Indiana has an interest in the effect of litigation on its own corporations as well as those merely doing business in Indiana. MBUSA admittedly does business in Indiana with TMC at the very least. As such, Indiana has an interest in MBUSA's chassis and related warranties in addition to the TMC RV and warranty. Therefore, MBUSA has failed to show that the public interest in this litigation favors Colorado or Utah over Indiana.

Notably, MBUSA directs the Court's attention primarily to the convenience-of-the-witnesses factor in its overall Section 1404(a) transfer analysis. MBUSA's approach makes sense because of the significance of the convenience-of-witnesses factor to any transfer analysis. *See Omnisource Corp.*, 2008 WL 2756345, at *6. However, the Court already concluded that even the convenience of witnesses does not favor transfer as strongly as MBUSA wants the Court to believe given the procedural mechanisms available to mitigate the burden that Indiana litigation could put on non-party witnesses. Therefore, after balancing both the private and public interests related to MBUSA, the Court is not persuaded that MBUSA's private and public interests clearly

---

[2] MBUSA seems to think that only federal law is implicated in this case. [DE 8 at 6, ¶ 30]. The Court simply accepts MBUSA's conclusion for purposes of the Section 1404(a) transfer analysis without reaching any conclusion as to the laws applicable to Plaintiffs' claims.

14

favor transfer. Nevertheless, the Court will assume, based on the benefit to non-party witnesses discussed above, that the *Howmedica* Step Two analysis favors transfer to Utah or Colorado. With *Howmedica*'s Step One pointing toward the Northern District of Indiana and Step Two marginally pointing toward the District of Colorado or the District of Utah, the Court now proceeds to the severance analysis in Step Three.

### 3. Step Three: Severance Issues

Severance of claims or parties might be clearly warranted "to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects; or to allow for subsequent impleader." *In re: Howmedica Osteonics Corp.*, 867 F.3d at 404. Severance may also be impossible in other situations, "such as when a party is indispensable under Federal Rule of Civil Procedure 19(b)." *Id.* (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572–73 (2004); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 421–22 (3d Cir. 2010)).

Here, no party argues that severance is needed to preserve diversity jurisdiction. In fact, Plaintiffs' complaint does not plead the states of incorporation of TMC or MBUSA and therefore fails to adequately allege subject matter jurisdiction based upon the parties' diversity of citizenship. *See* 28 U.S.C. § 1332(c)(1). This Court only retains subject matter jurisdiction over this case based upon the federal question presented under the MMA and the resulting supplemental jurisdiction over Plaintiffs' contract claims. *See* 28 U.S.C. §§ 1331, 1367. Similarly, no party alleges any personal jurisdiction, venue, or joinder defects that can only be cured by transferring the case to Utah or Colorado. And no party raises the need to allow for subsequent impleader.

15

With none of these issues present, the Court is left to consider Plaintiffs' argument that

MBUSA constitutes a necessary party under Fed. R. Civ. P. 19(a).

> Fed. R. Civ. P. 19(a)(1) defines a "required party" as:
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> Indeed, MBUSA manufactured the chassis in Plaintiffs' RV at issue. As a result,

Plaintiffs argue that their claims against both TMC and MBUSA arise out of a "common nucleus of operative fact" such that keeping the claims together would avoid the risk of conflicting rulings and promote efficiencies for the Court, the parties, and the witnesses. *Cf. MB Financial*, 2018 WL 3920715, at *5. Notably, TMC agrees that it would be better to decide all of Plaintiffs' claims together in one forum.

In response, MBUSA only states that it *would have* argued for severance had it known sooner about the forum-selection clause. However, MBUSA offered nothing to explain why severance would be appropriate or to present any objection to Plaintiffs' assertion that it is indeed a necessary party in this case. Without more, MBUSA has not persuaded the Court that severance is clearly warranted in this case. *See In re: Howmedica Osteonics Corp.*, 867 F.3d at 405. In fact, Plaintiffs have demonstrated that MBUSA is a necessary party to this action under Fed. R. Civ. P. 19(a)(1) given the risk of

16

inconsistent rulings that would arise if Plaintiffs' claims against MBUSA were severed because the MBUSA chassis is inextricably linked to the finished RV manufactured by TMC. Therefore, severance is clearly disallowed ending the *Howmedica* analysis and leaving only the question of which forum is most appropriate, a decision left to the discretion of the Court. *See In re: Howmedica Osteonics Corp.*, 867 F.3d at 405.

Review of the record as a whole, as evidenced from the discussions above, shows that MBUSA has not demonstrated that its interests "overwhelmingly outweigh the strong public interest in upholding . . . the settled expectations" of Plaintiffs and TMC based upon the forum-selection clause in the TMC Warranty. *Id.* Moreover, MBUSA has not met its burden under the Section 1404(a) analysis to show that transfer to Colorado or Utah is clearly more convenient. *See Coffey*, 796 F.2d @ 220. In fact, transfer to Utah or Colorado would only shift the inconveniences inherent in cross-country litigation among the parties. *See Research Automation*, 626 F.3d at 979. Venue in Indiana does not make MBUSA's litigation of this unseverable case more challenging, especially because of the procedural mechanisms available to minimize the burden on any non-party witnesses and to alleviate any prejudice that might result if those non-party witnesses were not subject to the subpoena power of this Court.

## III. CONCLUSION

Therefore, for the reasons discussed above, the Court **DENIES** MBUSA's motion to transfer. [DE 8]. With the question of transfer resolved, the Court will issue a separate order for a Rule 26(f) Report of Parties' Planning Meeting and set a date for a Rule 16(b) Pretrial Scheduling Conference.

**SO ORDERED** this 22nd day of May 2019.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge